IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

LYDIA ROBERTA BLACKMON, *et al.*                               PLAINTIFFS

v.                                    CIVIL ACTION NO. 5:21-CV-62-KS-RHWR

ADAMS COUNTY, MISSISSIPPI, *et al.*                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **grants** Defendants' Motion to Strike [27]. The Court also **grants in part and denies in part** Defendants' Motion for Judgment on the Pleadings [14].

## I. BACKGROUND

This is an employment discrimination and retaliation case. Plaintiffs are former public defenders in the Circuit Court of Adams County. They claim that Defendants – Adam County and individual members of its Board of Supervisors – paid them less than similarly-situated white and male public defenders. They also claim that Defendants altered the manner in which the county provided public defenders in order to eliminate them from the job. Defendants filed a Motion for Judgment on the Pleadings [14] and a Motion to Strike [27]. Both motions are ripe.

## II. MOTION TO STRIKE

Defendants filed their Motion for Judgment on the Pleadings [14] on December 13, 2021. Plaintiffs sought and received numerous extensions of time to respond to the motion. Ultimately, they missed their deadline and filed a motion [24] seeking

leave to file the response out of time. The Court granted the motion, but Plaintiffs never filed the response. Nevertheless, the Court will deem the response filed, as Plaintiffs attached a copy of it to their motion seeking leave to file it out of time. *See* Attachments to Motion for Leave to File [24-1, 24-2, 24-3].

Defendants filed a Motion to Strike [27] one of the exhibits to Plaintiffs' response to Defendants' Motion for Judgment on the Pleadings [14]. Specifically, Plaintiffs attached a copy of a notice of claim dated December 15, 2020, addressed to the Adams County Chancery Clerk. Exhibit to Motion for Leave to File [24-2]. Defendants argue that the Court may not consider the exhibit when addressing the pending Motion for Judgment on the Pleadings [14]. Plaintiffs did not respond to the Motion to Strike [27].

Motions for judgment on the pleadings are subject to the same standard of review as a motion under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* But the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*

2

Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (punctuation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

"The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, LLP*, 912 F.3d 759, 763 (5th Cir. 2019). The Court may also consider matters of public record, *Davis v. Bayless*, 70 F.3d 367, n. 3 (5th Cir. 1995), and any other matters of which it may take judicial notice. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). However, the "district court has complete discretion to either accept or exclude the evidence." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2008).

The Notice of Claim [24-2] was not attached to the Complaint or the Motion for Judgment on the Pleadings. It is not a matter of public record, and Plaintiffs have not argued that the Court may take judicial notice of it. Therefore, the Court may not

consider it without converting the Motion for Judgment on the Pleadings to a Motion for Summary Judgment. This Court's typical practice has been to decline to convert such motions. *See, e.g. D.M. v. Forrest County Sheriff's Dep't,* 2020 WL 4873486, at *2 (Aug. 19, 2020). Therefore, the Court declines to consider the notice of claim and **grants** Defendants' Motion to Strike [27] the Notice of Claim attached as an exhibit to Plaintiffs' Motion for Leave to File [24-2].

### III. MOTION FOR JUDGMENT ON THE PLEADINGS [14]

**A.** *Judicial Immunity*

First, Defendants argue that Adams County and the individual board members are entitled to absolute judicial immunity from liability as to Plaintiffs' federal claims. Defendants argue that they are entitled to judicial immunity because Plaintiffs were paid by the Board of Supervisors in accordance with judicial orders from a circuit court judge. In other words, Defendants contend that judicial immunity extends to them because they were following a judge's orders.

"An official acting within the scope of his authority is absolutely immune from a suit for damages to the extent that the cause of action arises from his compliance with a facially valid judicial order issued by a court acting within its jurisdiction." *Mays v. Sudduth*, 97 F.3d 107, 113 (5th Cir. 1996). Indeed, "[u]nder Mississippi law, the judge is the ultimate authority for the supervision of the court in his jurisdiction." *Brooks v. George County*, 84 F.3d 157, 168 (5th Cir. 1996). However, "[a]s the officer's immunity derives from that of the issuing judge, the order must be one for which the

judge is absolutely immune from suit." *Mays*, 97 F.3d at 114.

To determine whether a judge is entitled to judicial immunity, the Court applies "a functional approach, which looks to the nature of the function performed, not the identity of the actor who performed it." *Id.* at 110. Generally, "judges enjoy absolute immunity for judicial acts performed in judicial proceedings." *Id.* To determine whether an official is entitled to judicial immunity, the Court focuses on the nature of the disputed actions, rather than the identity of the actor. *Hulsey v. Owens*, 63 F.3d 354, 356 (5th Cir. 1995).

Although there is no "precise and general definition of the class of acts entitled to immunity," the law recognizes a distinction "between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." *Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988). "Administrative decisions, even though they may be essential to the very functioning of the courts, have not . . . been regarded as judicial acts." *Id.* at 228. Accordingly, the Supreme Court has held that a judge acted "in an administrative capacity when he demoted and discharged" a probation officer. *Id.* Such employment decisions, while "important in providing the necessary conditions of a sound adjudicative system," are "not themselves judicial or adjudicative." *Id.* at 229.

The Fifth Circuit has provided a four-factor test. *Davis v. Tarrant County*, 565 F.3d 214, 222-23 (5th Cir. 2009). The Court should consider: "(1) whether the precise

5

act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity." *Id.* at 222. "These facts are broadly construed in favor of immunity." *Id.* at 223.

Plaintiffs' allegations focus on three issues: 1) their receipt of $800.00 less per month than the other public defenders from September 2019 until the Board of Supervisors planned to establish an Office of Public Defender; 2) the Board of Supervisors abandoning the plan to establish an Office of Public Defender, and 3) their exclusion from the list of potential public defenders used by the Court after the Board of Supervisors abandoned the plan to establish an Office of Public Defender.

### 1.     *§ 1983 Claims Against the County*

First, "defenses such as absolute quasi-judicial immunity, that only protect defendants in their individual capacities, are unavailable in official-capacity suits." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000). Therefore, the Court rejects this argument as applied to the County or the individual Defendants in their official capacities.

### 2.     *Unequal Pay*

Plaintiffs alleged that the Board of Supervisors approved a budget for the Circuit Court, and that the Circuit Court judges issued pay orders for the public defenders. Plaintiffs further alleged that in December 2019, Judge Sanders increased

the monthly pay of public defenders appearing before her, but that Judge Blackwell did not. Each individual Defendant in this case is a member of the Adams County Board of Supervisors, and it appears to be undisputed – based on Plaintiffs' own allegations – that Defendants did not set the amount of Plaintiffs' pay. Rather, they executed a pay order entered by the Circuit Court.

Mississippi law provides two methods for appointment of public defenders. *See* MISS. CODE ANN. §§ 99-15-15, 25-32-1. First, the court may appoint counsel on a case-by-case basis. MISS. CODE ANN. § 99-15-15. When this method is employed, the public defender's compensation is "approved and allowed by the appropriate judge." MISS. CODE ANN. § 99-15-17.

Alternatively, a county board of supervisors may establish an office of public defender. MISS. CODE ANN. § 25-32-1. When this method is employed, the board of supervisors "establish[es] the office, provide[s] office space, personnel and funding for the office . . . ." *Id.* The court appoints the public defender, MISS. CODE ANN. § 25-32-3(1), but his or her compensation is set by the board of supervisors. MISS. CODE ANN. § 25-32-5. The public defender appoints any assistant public defenders, subject to the approval of the board of supervisors. MISS. CODE ANN. § 25-32-3(2). "The compensation and expenses of the public defender's office shall by paid by the county, . . . upon allowance by the board of supervisors by order spread upon the minutes of the board." MISS. CODE ANN. § 25-32-7.

Based on Plaintiffs' allegations and a Mississippi Attorney General's opinion

arising from these events, *see* Re: Circuit Court Order of Compensation, 2020 WL 7862402 (Miss. A.G. June 26, 2020), it appears that Adams County employed the first method during the time relevant to Plaintiffs' claims of unequal pay. That is, the Court appointed public defenders as needed and set their compensation, while the County and Board of Supervisors just issued paychecks based on the judges' orders. The Court need not address whether the individual Defendants are entitled to quasi-judicial immunity against Plaintiffs' unequal pay claims because the Court separately finds, as explained below, that Plaintiffs have not alleged any facts indicating personal involvement by the individual Defendants in the determination of public defenders' compensation. Moreover, Plaintiffs have not alleged sufficient facts to state a claim of municipal liability under § 1983.

       3.     *Abandoning Plan to Establish an Office of Public Defender*

Plaintiffs also allege that the Board of Supervisors created an Office of Public Defender in August or September of 2020. The appointed public defender then selected four attorneys to serve as assistant public defenders, including Plaintiffs. Plaintiffs claim that the Board of Supervisors objected to their selection as assistant public defenders because they were related to one of the circuit court judges, and that the Board sought an opinion from the Mississippi Attorney General's Office as to whether "Mississippi's nepotism statute [would] be violated by a public defender appointing, to the position of assistant public defender, the sister and/or daughter of the Senior Circuit Court Judge." *See* Re: Nepotism in Appointment of Assistant Public

Defender, 2021 WL 2186162 (Miss. A.G. Apr. 12, 2021). The Attorney General responded: "Since the Senior Judge – the relative of the prospective assistant public defender in question – is not the appointing authority, there is no violation of Mississippi's nepotism statute." *Id.* at *2.

According to Plaintiffs, Defendants then "declined to allow the Public Defender's program to go forward, but approved and funded an alternative program that eliminated [Plaintiff] Blackmon from the list of attorneys to represent indigent defendants and replaced her with a white male and prevented both Plaintiffs from appearing in circuit court." Amended Complaint [4], at 7.

The Court need not address whether Defendants are entitled to quasi-judicial immunity against this claim because the Court separately finds, as explained below, that Defendants are entitled to legislative immunity from liability against this claim. Moreover, Plaintiffs have not alleged sufficient facts to state a claim of municipal liability under § 1983.

### 4.   *Exclusion from the New List*

Plaintiffs also alleged that they were ultimately excluded from the circuit court's new list of public defenders after the Board of Supervisors abandoned its plan to establish an Office of Public Defender.

According to Plaintiffs, Defendants "declined to allow the Public Defender's program to go forward, but approved and funded an alternative program that eliminated [Plaintiff] Blackmon from the list of attorneys to represent indigent

defendants and replaced her with a white male and prevented both Plaintiffs from appearing in circuit court." Amended Complaint [4], at 7. Plaintiffs claim that Defendants "approved a budget that accommodated the continued . . . use of the court appointed attorneys as was done previously." *Id.* at 8.[1]  However, Plaintiffs claim that Defendants "manipulated and interfered with the staffing and operation of indigent representation through refusing to approve payment for a process that it did not control as well as to specifically eliminate Plaintiffs' involvement in any process." *Id.* at 8. Plaintiffs did not elaborate or provide any specific details as to how Defendants allegedly manipulated and interfered with this process beyond ultimately abandoning the plan for an Office of Public Defender.

The Fifth Circuit has held that "the act of selecting applicants for inclusion on a rotating list of attorneys eligible for court appointments is inextricably linked to and cannot be separated from the act of appointing counsel in a particular case, which is clearly a judicial act, and therefore, . . . must be considered to be protected by judicial immunity." *Davis*, 565 F.3d at 226. Therefore, to the extent Plaintiffs complain of their exclusion from the court's list of attorneys after the Board of Supervisors abandoned the plan to establish an Office of Public Defender, the Court finds that Defendants are entitled to judicial immunity. As explained above, when a court appoints counsel on a case-by-case basis, the court chooses the attorney and approves their pay. *See* MISS. CODE ANN. §§ 99-15-15, 99-15-17. Determining which

---

[1] Plaintiffs likewise represented in briefing that Defendants returned to the system used prior to the abandoned public defender's office. *See* Exhibit to Motion for Leave to File [24-3], at 13.

attorneys are in this rotating pool is a judicial act, *Davis*, 565 F.3d at 226, and, therefore, any actions by the Board of Supervisors executing such judicial orders are likewise entitled to immunity. *Mays*, 97 F.3d at 113. The Court grants Defendants' Motion to Dismiss [14] as to any § 1983 claims against the individual Defendants arising from Plaintiffs' exclusion from the circuit court's public defender list after the Board abandoned its plan to establish an Office of Public Defender.

## B.   *Legislative Immunity*

Next, Defendants argue that the individual board members are entitled to absolute legislative immunity from liability as to Plaintiffs' federal claims. "The principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo-American law." *Craig v. Police Jury Parish*, 265 F. App'x 185, 189 (5th Cir. 2008). Accordingly, "state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." *Id.* (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 48-49, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998)). "Not all actions taken by an official with legislative duties, however, are protected by absolute immunity – only those duties that are functionally legislative." *Id.* "A defendant's actions are legislative and protected by legislative immunity if they reflect a discretionary, policymaking decision of general application, rather than an individualized decision based upon particular facts." *Weingarten Realty Investors v. Silvia*, 376 F. App'x 408, 410 (5th Cir. 2010). In the context a § 1983 claim, legislative immunity only applies to claims against legislators

in their individual capacities. *See Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish*, 849 F.3d 615, 624 (5th Cir. 2017); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999).

The Court need only apply this argument to Plaintiffs' claims arising from the Board of Supervisors' decision to abandon the plan to establish an Office of Public Defender. The Board's decision to go back to the old method of providing indigent defense was "general and prospective. It directly affect[ed] the entire community." *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 273 (5th Cir. 2000). In other words, the Board's actions did not specifically concern Plaintiffs or their interests alone. The action in dispute "bore all the hallmarks of traditional legislation. It reflected a discretionary, policymaking decision implicating the budgetary priorities of the [County] and the services the [County] provides to its constituents." *Bogan*, 523 U.S. at 55-56. The decision to abandon the planned Office of Public Defender "involved eliminating an entire position, not firing a particular employee." *Craig*, 265 F. App'x at 191 (citing *Bogan*, 523 U.S. at 56). The Board's motivation is irrelevant. *Id.* Objectively, the action "bears the hallmarks of traditional legislation." *Id.* Therefore, the Court finds that the individual Defendants are entitled to legislative immunity from liability as to any § 1983 claims arising from this legislative action.

## C.    *Personal Involvement*

Defendants also argue that the individual Defendants can not be liable in their individual capacities for Plaintiffs' claims arising from alleged unequal pay or

exclusion from the list of attorneys to represent indigents because Plaintiffs did not allege sufficient facts demonstrating that the individual Defendants were personally involved in these matters.

To be liable under 42 U.S.C. § 1983, "a defendant must either be personally involved in the constitutional violation or commit acts that are causally connected to the constitutional violation alleged." *Magnolia Island Plantation, LLC v. Whittington*, 29 F.4th 246, 251 (5th Cir. 2022). Here, Plaintiffs plainly alleged that Judge Blackwell – not Defendants – failed to increase their pay. Moreover, as explained above, when a circuit court appoints indigent counsel on a case-by-case basis, the attorney's compensation is "approved and allowed by the appropriate judge," MISS. CODE ANN. § 99-15-17, and "[t]be board of supervisors may not change on order of the circuit court for compensation to counsel for an indigent defendant." Re: Circuit Court Order of Compensation, 2020 WL 7862492, at *1 (Miss. A.G. June 26, 2020). Therefore, the Court finds that Plaintiffs failed to allege any personal involvement by the individual Defendants relevant to their unequal pay claims or the new list of attorneys utilized by the court after the Board abandoned its plan to establish an Office of Public Defender.

## D.   *Duplicative Claims*

Next, Defendants argue that the Court should dismiss Plaintiffs' claims against the individual Defendants in their official capacities as duplicative of Plaintiffs' claims against the County. With respect to Plaintiffs' state-law claims,

13

Mississippi courts have held that "[t]here is no need to retain defendants in their official capacity if the entity which they serve in that capacity is also a defendant." *Brown v. City of Hazlehurst*, 741 So. 2d 975, 982 (Miss. Ct. App. 1999) (citing *Mosby v. Moore*, 716 So. 2d 551, 557 (Miss. 1998)). As for the federal claims, when a plaintiff asserts official-capacity claims against a government official under § 1983, "the real party in interest is the [government] entity." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009). There is no advantage to Plaintiffs, practical or otherwise, in retaining the official-capacity claims against the individual Defendants alongside the identical claims against the County. Maintaining both needlessly clutters the record, and they are functionally the same causes of action. This Court's typical practice has been dismiss such redundant claims. *See, e.g. Thomas v. City of Laurel, Miss.*, 2019 WL 12251888, at *2 (S.D. Miss. Dec. 5, 2019); *Seibert v. Jackson County, Miss.*, 2014 WL 4146487, at *2 (S.D. Miss. Aug. 19, 2014). Therefore, the Court grants Defendants' motion as to Plaintiffs' official-capacity claims against the individual Defendants under § 1983 and state law.

## E. *Qualified Immunity, Failure to State a Claim*

Defendants also argue that Plaintiffs have not pleaded sufficient facts to state certain federal claims against the individual Defendants, or to overcome their qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "Although nominally a defense, the plaintiff has the burden to negate the defense once properly raised." *Poole v. Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

There are two steps in the Court's analysis. First, the Court determines whether the defendant's "conduct violates an actual constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Second, the Court must "consider whether [the defendant's] actions were objectively unreasonable in the light of clearly established law at the time of the conduct in question." *Id.* The Court may address either step first. *Pearson*, 555 U.S. at 236.

### 1.   Racial Discrimination

Plaintiffs asserted claims of racial discrimination under §§ 1981 and 1983. They alleged that Defendants discriminated against them by paying them less than similarly-situated white men. Personal involvement is a requirement for liability under both § 1981 and § 1983. *See, e.g. Magnolia Island Plantation*, 29 F.4th at 251; *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *King v. Bd. of Trustees*, 2014 WL 1276477, at *13 (S.D. Miss. Mar. 27, 2014). As noted above, Plaintiffs alleged that Judge Blackwell – not Defendants – failed to increase their pay. Moreover, as explained above, when a circuit court appoints indigent counsel on a case-by-case basis, the attorney's compensation is "approved and allowed by the appropriate judge," MISS. CODE ANN. § 99-15-17, and "[t]be board of supervisors may not change on order of the circuit court for compensation to counsel for an indigent defendant."

15

Re: Circuit Court Order of Compensation, 2020 WL 7862492, at *1 (Miss. A.G. June 26, 2020). Therefore, Plaintiffs failed to state a racial pay discrimination claim against the individual Defendants.

      2.    *Sex Discrimination*

Plaintiffs also asserted claims of sex discrimination, alleging that Defendants discriminated against them by paying them less than similarly-situated men. For the same reasons provided above in the Court's discussion of Plaintiffs' racial pay discrimination claim, the Court finds that Plaintiffs failed to state a sexual discrimination claim against the individual Defendants.

      3.    *First Amendment Retaliation*

Plaintiffs asserted a claim of First Amendment retaliation, alleging that Defendants retaliated against their pay complaints by abandoning the plan to establish an Office of Public Defender. For the same reasons provided above, the Court finds that the individual Plaintiffs are entitled to absolute legislative immunity for their decision to abandon the plan for an Office of Public Defender.

To the extent Plaintiffs asserted that Defendants retaliated against their pay complaints by failing to include them on the list of attorneys used by the court after the Board abandoned its plan for an Office of Public Defender, the Court again notes that personal involvement is a requirement for liability under § 1983. *Magnolia Island Plantation*, 29 F.4th at 251. It is undisputed that, under this method of indigent representation, the court appoints counsel on a case-by-case basis and sets

16

their pay. MISS. CODE ANN. §§ 99-15-15, 99-15-17. Therefore, the Court finds that Plaintiffs failed to state a retaliation claim against the individual Defendants arising from the court's failure to include Plaintiffs on the list of attorneys used for indigent counsel after the Board abandoned the plan for an Office of Public Defender.

    *4.    Fourteenth Amendment Retaliation*

To the extent Plaintiffs pleaded any retaliation claim under the Fourteenth Amendment, no such cause of action is recognized in this jurisdiction. *See, e.g. Cox v. Scott Cnty. Sch. Dist.*, 2021 WL 1207718, at *13 (S.D. Miss. Mar. 30, 2021) (citing cases).

    *5.    Conspiracy*

Plaintiffs asserted a conspiracy claim under 42 U.S.C. § 1985. They alleged that Defendants "engaged in a conspiracy to eliminate Plaintiffs' participation in the representation of indigents in the Circuit Court of Adams County." Amended Complaint [4], at 9. They also alleged that Defendants conspired to withhold pay from Plaintiffs and replace them with white attorneys.

To state a claim under 42 U.S.C. § 1985(3), Plaintiffs must allege specific facts demonstrating that Defendants "(1) conspired; (2) for the purpose of depriving, either directly or indirectly, [Plaintiffs] of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) took or caused action in furtherance of the conspiracy; which (4) injured [Plaintiffs] or deprived [them] of [their] rights and privileges as a United States citizen." *Shaw v. Villanueva*, 918 F.3d

414, 419 (5th Cir. 2019). "[T]he conspiracy must also have a racially based animus." *Lockett v. New Orleans*, 607 F.3d 992, 1002 (5th Cir. 2010).

To the extent Plaintiffs' § 1985 claim arises from their unequal pay claims, the Court finds that they have failed to state a claim under § 1985 because they have not alleged that the individual Defendants took or caused any action to deprive them of pay. As the Court explained above, under the first method of indigent representation, the circuit court appoints counsel on a case-by-case basis and sets their pay. MISS. CODE ANN. §§ 99-15-15, 99-15-17. "The board of supervisors may not change on order of the circuit court for compensation to counsel for an indigent defendant." Re: Circuit Court Order of Compensation, 2020 WL 7862492, at *1 (Miss. A.G. June 26, 2020). Additionally, the individual Defendants enjoy absolute quasi-judicial immunity against liability for claims arising from the circuit court's failure to include Plaintiffs on the list of attorneys it uses for indigent representation.

To the extent Plaintiffs' § 1985 claim arises from the abandonment of the plan to establish an Office of Public Defender, the Court finds that the individual Defendants are entitled to absolute judicial immunity, for the same reasons provided above.

### 6.    *42 U.S.C. § 1986*

"[A] valid § 1985 claim is a prerequisite to a § 1986 claim . . . ." *Bryan*, 213 F.3d at 276; *see also Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 281 n. 3 (5th Cir. 1998). Therefore, as the Court has dismissed Plaintiffs' § 1985 claims against the individual

Defendants, the Court likewise dismisses their § 1986 claims.

**E.    *Municipal Liability***

Next, Defendants argue that Plaintiffs have not alleged sufficient facts to assert § 1983 claims against Adams County or the individual Defendants in their official capacities. The Fifth Circuit provided the following summary of the law concerning municipal liability under § 1983:

> A municipality is not liable under § 1983 on the theory of respondeat superior, but only for acts that are directly attributable to it through some official action or imprimatur. To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of the constitutional injury. The official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result.

> Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. A policy is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy.

> Although an official policy can render a municipality culpable, there can be no municipal liability unless it is the moving force behind the constitutional violation. In other words, a plaintiff must show direct causation, i.e., that there was a direct causal link between the policy and the violation.

> A plaintiff must show that, where the official policy itself is not facially unconstitutional, it was adopted with deliberate indifference as to its known or obvious consequences. Deliberate indifference is a degree of culpability beyond mere negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight.

*James v. Harris County*, 577 F.3d 612, 617-18 (5th Cir. 2009) (punctuation and citations omitted).

As noted above, it appears that Adams County employed the method of court-appointed public defenders outlined in Miss. Code Ann. §§ 99-15-15 and 99-15-17 during the time relevant to Plaintiffs' unequal pay claims and after it abandoned the plan to establish an Office of Public Defender. That is, the court appointed public defenders and set their pay. *See* MISS. CODE ANN. § 99-15-17 ("The compensation for counsel for indigents appointed as provided in Section 99-15-15 shall be approved and allowed by the appropriate judge . . . ."). A circuit court judge's actions "cannot constitute municipal policy." *Estate of Brown v. George County, Miss.*, 2022 WL 989466, at *1 (5th Cir. Apr. 1, 2022) (citing *Davis*, 565 F.3d at 227 (5th Cir. 2009); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)). Therefore, the Court grants Defendants' motion as to 1) Plaintiffs' unequal pay claims under 42 U.S.C. § 1983 against the County and the individual Defendants in their official capacities, and 2) Plaintiffs' claims arising from their exclusion from the court's list of attorneys for public defenders after the Board abandoned its plan to establish an Office of Public Defender.

## G.    *State-Law Claims*

### 1.    *Breach of Contract*

Plaintiffs alleged that Defendants' termination of Blackmon constituted a breach of contract. The Court assumes that this refers to Defendants' abandonment

of the plan to establish an Office of Public Defender and resume the former method of the court appointing counsel for indigents.

First, Defendants argue that Plaintiffs are barred from bringing this claim because Blackmon failed to appeal the Board's decision to the County's circuit court, as required by Miss. Code Ann. § 11-51-75. In response, Plaintiffs argue that they are not required to exhaust administrative remedies before asserting a claim in federal court.

The relevant statute provides:

> Any person aggrieved by a judgment or decision of the board of supervisors . . . may appeal within ten (10) days from the date of adjournment at which session the board of supervisors . . . rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the board of supervisors . . . . The clerk shall transmit the bill of exceptions to the circuit court at once, and the court shall . . . hear and determine the same on the case as presented by the bill of exceptions as an appellate court, and shall affirm or reverse the judgment. If the judgment be reversed, the circuit court shall render such judgment as the board . . . ought to have rendered, and certify the same to the board of supervisors . . . .

MISS. CODE ANN. § 11-51-75. "The statute's ten (10) day time limit in which to appeal the decision of a Board is both mandatory and jurisdictional. Where an appeal is not perfected within the statutory time constraints, no jurisdiction is conferred on the appellate court; and the untimely action should be dismissed." *Newell v. Jones County*, 731 So. 2d 580, 582 (Miss. 1999).

"[A] plaintiff's failure to use § 11-51-75 does not prevent a federal court from hearing a *federal claim brought under § 1983*." *Griggs v. Chickasaw County, Miss.*,

930 F.3d 696, 703 (5th Cir. 2019) (emphasis added). But "a federal court must apply the relevant state's substantive law when adjudicating a claim arising under that state's law . . . ." *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 552 (5th Cir. 2020). Addressing a similar requirement under Texas law, the Fifth Circuit "assumed, without deciding, [a federal court's] obligation to follow such substantive state law can limit [its] jurisdiction to hear a state claim, to the extent state law bars state courts from doing so." *Id.*; *see also Reynolds v. City of Commerce, Tex.*, 853 F. App'x 978, 980 (5th Cir. 2021) (state-law takings claim was jurisdictionally barred because plaintiff failed to exhaust state administrative remedies); *Hedrick ex rel. Adams v. Tex. Workers Compensation Comm'n*, 54 F. App'x 592, 2002 WL 31730360, at *1 (5th Cir. Nov. 22, 2002) (where state law required exhaustion of administrative remedies, district court did not have jurisdiction to address unexhausted claim under state law). Therefore, the Court concludes that it does not have jurisdiction to address Plaintiffs' breach of contract claim.

Plaintiffs argue that there was no Board action for them to appeal because the Board did not hold a hearing, and it did not provide notice of its decision to the Plaintiffs. Obviously, Plaintiffs became aware of the Board's decision at some point because they filed this suit. The Mississippi Supreme Court has said that "any act [of a Board of Supervisors] is appealable" under Miss. Code Ann. § 11-51-75. *Benedict v. City of Hattiesburg*, 693 So. 2d 377, 380 (Miss. 1997). The action appealed from "does not have to be an order or formal judgment." *Id.* Regardless of the procedure employed

by the Board of Supervisors, Plaintiffs' remedy for the alleged breach of contract was to file a bill of exceptions in circuit court. *Id.*

    2.    *Slander and Libel*

Finally, Defendants argue that Adams County has not waived sovereign immunity as to Plaintiffs' slander and libel claims. The Mississippi Tort Claims Act ("MTCA") codified the common-law sovereign immunity of Mississippi and its political subdivisions, MISS. CODE ANN. § 11-46-3(1), but it waived sovereign immunity "from claims for money damages arising out of torts of . . . governmental entities and the torts of their employees while acting within the course and scope of their employment . . . ." MISS. CODE ANN. § 11-46-5(1). The waiver is subject to numerous conditions, exceptions, and limitations. Pertinent to the present motion, the MTCA provides that government employees "shall not be considered as acting within the course and scope of [their] employment . . . for any conduct" constituting "fraud, malice, libel, slander, defamation or any criminal offense." MISS. CODE ANN. § 11-46-7(2); MISS. CODE ANN. § 11-46-5(2). Therefore, Adams County has not waived its sovereign immunity with respect to Plaintiffs' claims of libel and slander.

Defendants also argue that the individual Defendants cannot be personally liable for Plaintiffs' claims of libel and slander because they arise from actions undertaken within the scope of their duties as members of the Board of Supervisors. Under the MTCA, government employees can not be personally liable for "acts or omissions occurring within the course and scope of [their] duties." MISS. CODE ANN. §

11-46-7(2). However, as noted above, a government employee is not "acting within the course and scope of his employment" if his conduct "constituted fraud, malice, libel, slander, defamation, or any criminal offense other than traffic violations." *Id.* Therefore, the Court rejects this argument as applied to Plaintiffs' claims of libel and slander.

Defendants also argue that Plaintiffs failed to state a claim of libel or slander because they failed to allege specific details concerning the libelous and/or slanderous statements that each individual Defendant allegedly made. "In Mississippi, a complaint alleging defamation must set forth the statements, paraphrased or verbatim, that constituted the defamation." *Cooper v. Paragon Sys., Inc.*, 2008 WL 4187942, at *3 (N.D. Miss. Sept. 5, 2008) (citing *Chalk v. Bertholf*, 980 So. 2d 290, 298 (Miss. Ct. App. 2007)); *see also Ducksworth v. Rook*, 2015 WL 737574, at *5 (S.D. Miss. Feb. 20, 2015); *Hayne v. The Innocence Project*, 2011 WL 198128, at *6 (S.D. Miss. Jan. 20, 2011). Here, Plaintiffs provided no factual details concerning the alleged defamation. They merely alleged that "Defendants spread false, vicious and untrue information about Plaintiffs in an effort to damage Plaintiffs' reputation." Amended Complaint [4], at 14. Therefore, the Court finds that Plaintiffs failed to state claims for libel or slander.

## IV. CONCLUSION

For the reasons provided below, the Court **grants** Defendants' Motion to Strike [27]. The Court also **grants in part and denies in part** Defendants' Motion for

Judgment on the Pleadings [14]. Specifically, the Court grants the motion as follows:

- The individual Defendants are entitled to absolute judicial immunity from liability as to any § 1983 claims arising from the exclusion of Plaintiffs from the list of attorneys the court uses to appoint public defenders.

- The individual Defendants are entitled to absolute legislative immunity from liability as to any § 1983 claims arising from their decision to abandon the plan to establish an Office of Public Defender.

- Plaintiffs failed to allege any personal involvement by the individual Defendants relevant to their claims that 1) they were paid less than other attorneys for representing indigents, or 2) they were excluded from the new list of attorneys utilized by the court after the Board abandoned its plan to establish an Office of Public Defender.

- Plaintiffs' official-capacity claims against the individual Defendants under § 1983 and state law are redundant, and, therefore, they should be dismissed.

- Plaintiffs failed to state a racial pay discrimination claim against the individual Defendants in their individual capacities.

- Plaintiffs failed to state a sex discrimination claim against the individual Defendants in their individual capacities.

- Plaintiffs failed to state a First Amendment retaliation claim against the individual Defendants arising from the court's failure to include Plaintiffs on the list of attorneys used for indigent counsel after the Board abandoned the plan for an Office of Public Defender.

- To the extent Plaintiffs pleaded any retaliation claim under the Fourteenth Amendment, no such cause of action is recognized in this jurisdiction.

- Plaintiffs failed to state claims under 42 U.S.C. §§ 1985 or 1986.

- Plaintiffs failed to state a claim for municipal liability under 42 U.S.C. § 1983 against the County arising from 1) Plaintiffs' unequal pay claims, and 2) Plaintiffs' claims arising from their exclusion from

the court's list of attorneys for public defenders after the Board abandoned its plan to establish an Office of Public Defender.

- This Court does not have jurisdiction to address Plaintiffs' breach of contract claim because Plaintiffs' failed to exhaust their administrative remedies under state law.

- Adams County has not waived its sovereign immunity with respect to Plaintiffs' claims of libel and slander, and Plaintiffs have not stated claims for libel or slander because they failed to plead any factual details concerning the alleged defamatory statements.

The Court denies the motion in all other respects.

This Court frequently allows parties a chance to amend and correct pleading deficiencies after it has addressed a motion under Rule 12(b)(6) or 12(c). *See, e.g. Mowdy v. Huntingdon Ingalls Inc.*, 2020 WL 1867989, at *3 (S.D. Miss. Apr. 14, 2020); *Ducksworth v. Rook*, 2015 WL 737574, at *6 (S.D. Miss. Feb. 20, 2015); *Pardue v. Jackson County, Miss.*, 2015 WL 1867145, at *6 (S.D. Miss. Apr. 23, 2015). All the issues outlined in this opinion can not be cured by repleading, but some may. Regardless, Plaintiffs may file a Second Amended Complaint within fourteen days of the entry of this opinion.

SO ORDERED AND ADJUDGED this 5th day of May, 2022.

        /s/     Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE